CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 24 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **MILDRED C. MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 7:05cv00251** |
| **v.** | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) **By:** | **Hon. Michael F. Urbanski** |
| | ) | **United States Magistrate Judge** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Mildred C. Moore ("Moore") brought this action pursuant to 42 U.S.C. § 405(g) for a review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. As the undersigned finds substantial evidence to support the determination that Moore is not disabled under the Act, the decision of the administrative law judge is affirmed.

I

Plaintiff was born on February 25, 1960, and graduated high school. (Administrative Record, hereinafter "R." at 17, 48, 65, 185) Plaintiff's previous work includes that of a production worker and seamstress. (R. 60) Plaintiff filed an application for DIB on August 25, 2003, alleging she became disabled on December 10, 2002, due to neck pain; fibromyalgia; carpal tunnel; osteoarthritis; numbness in arms, hands and legs; fatigue; depression; and

endometriosis. (R. 14, 59) Plaintiff's claims were denied at both the initial and reconsideration levels of administrative review, (R. 14), and an administrative hearing was held before an administrative law judge ("ALJ") on February 9, 2005. (R. 181-240) On February 23, 2005, the ALJ issued a decision denying plaintiff's claim for DIB, finding Moore retained the residual functional capacity ("RFC") to lift or carry up to ten (10) pounds frequently, and twenty (20) pounds occasionally; frequently balance and climb ramps/stairs; crouch or crawl on an occasional basis; and sit, stand, or walk for six (6) hours each in an eight (8) hour workday. (R. 23, 24) The ALJ also noted that Moore is unable to climb ladders or perform jobs that involve exposure to hazards. (R. 23, 24)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on April 11, 2005, when the Appeals Council denied plaintiff's request for review. (R. 5-8) Plaintiff then filed this action challenging the Commissioner's decision.

**II**

Plaintiff argues that the ALJ erred in concluding that her complaints are not credible, contending that objective medical evidence supports her claims. Alternatively, plaintiff requests that the court remand this case to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g).

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has

been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## III

Plaintiff first argues that the ALJ erred in finding Moore's allegations regarding her limitations were not totally credible. The ALJ determined that the plaintiff's subjective complaints are out of proportion to the objective evidence and clinical findings in the record, and "do not support a conclusion that the limitations are of an intensity, frequency, or duration as to preclude the performance of all work activity." (R. 22)

In reviewing cases for substantial evidence, courts must not undertake to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). It is well settled that credibility determinations are in the province of the ALJ, and that courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). The ALJ is not required to accept all subjective testimony at face value. See Hays, 907 F.2d at 1456. Because the ALJ had an opportunity to observe plaintiff's demeanor and to determine her credibility, his observations are to be afforded great weight. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Plaintiff's assertions that the ALJ improperly weighed her credibility regarding her limitations and her ability to engage in substantial work activity are without merit. Plaintiff's testimony as to her limitations was considered in the context of all of the evidence before the ALJ, and from that evidence he found Moore's claims lacked credibility. (R. 22) Certainly, the

ALJ recognized that plaintiff's residual functional capacity is limited as a result of her physical condition, as evident by the ALJ's determination that plaintiff is capable of a limited range of light and sedentary work. (R. 23-24) The evidence in the record supports the ALJ's decision that the plaintiff had the RFC to perform the jobs about which the vocational expert ("VE") testified.[1] No doctor has opined that plaintiff is disabled, or that plaintiff must limit her daily activities any more than as outlined by the ALJ.

Moore initially visited May Chiropractic Center in June, 2002, complaining of lower back pain and stiffness, pain in both legs, pain and stiffness in the thoracic and cervical areas, and wrist and hand pain and numbness. (R. 117) An examination revealed pain, tenderness, slight edema and restricted motion at the C5, C6, T5 and L5 vertebrae. (R. 117) X-rays indicated misalignments of C5, C6, T5 and L5 vertebrae, as well as a narrowing or degeneration of the C5 disc space. (R. 117) Signs of posterior displacement of the C5 vertebra and evidence of exostosis and osteoathritic spurring at C5 were also apparent. (R. 117) David A. May, D.C. stated three to six months of care would be needed to resolve plaintiff's injuries. (R. 118) When Moore visited the Center again in December, 2002, her condition had "somewhat improved both subjectively and objectively." (R. 119) Plaintiff was "able to perform normal work duties but with discomfort." (R. 119)

Nearly one year later, in October, 2003, an x-ray of Moore's spine revealed narrowing disk space at C5-6 and C6-7. (R. 122) Records indicate that plaintiff had a moderate degree of

---

[1] Based on the hypothetical posed by the ALJ, the VE testified that Moore could perform the "light" jobs of usher, counter clerk, and ticket taker, and the "sedentary" positions of cashier and clerical worker, all of which exist in sufficient numbers in the regional and national economies. (R. 23, 233-38)

degenerative disease in the lower C-spine. (R. 122) A psychiatric review technique completed in October, 2003 revealed plaintiff has no mental impairment whatsoever. (R. 132, 144)

Plaintiff was examined by William Humphries, M.D., of Virginia Department of Rehabilitative Services, on October 23, 2003, and complained of chronic neck and back pain. (R. 126) At the time, she was taking no medication for her pain. (R. 126) Dr. Humphries noted she had a severely reduced range of back motion with some mild straightening of the normal lower lordotic curve. (R. 127) She was able to get on and off the examining table without difficulty, except that she guarded her back movement. (R. 127) Her radial, median and ulnar nerve functions were bilaterally intact, and she exhibited no tremors or involuntary movements. (R. 127) She was able to perform fine manipulation adequately. (R. 127) Dr. Humphries limited Moore to sitting, standing and walking six (6) hours in an eight (8) hour workday, lifting fifty (50) pounds occasionally and twenty (20) pounds frequently, with no restrictions on climbing, kneeling, or crawling. (R. 128)

The RFC assessment completed on November 7, 2003 by state agency physician Randall Hays, M.D., is likewise inconsistent with the limitations placed on plaintiff by the ALJ. (R. 146-153) Dr. Hays limited plaintiff to lifting twenty (20) pounds occasionally, and ten (10) pounds frequently; standing and/or walking for about six (6) hours in an eight (8) hour workday; and sitting for a total of about six (6) hours in an eight (8) hour workday. (R. 147) It was noted that plaintiff is able to frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds. (R. 147) In addition, plaintiff is able to occasionally stoop, crouch and crawl, (R. 147), and is to avoid hazardous situations, (R. 151). Dr. Hays' assessment was reviewed and affirmed by Richard M. Surrusco, M.D., on November 20, 2003. (R. 153)

Plaintiff visited the Kuumba Community Health and Wellness Center on November 11, 2003 for her neck and back pain. (R. 155) At the time, she refused a referral for an MRI. (R. 156) Dr. Hansen noted he was limited in what he could do for plaintiff's back pain. (R. 156) He prescribed Nortryptylline and recommended water aerobics. (R. 156) Five months later, on April 24, 2004, plaintiff visited Kuumba again, complaining of neck pain. (R. 158) Notes indicate she had not been taking her medication or doing her exercises. (R. 158) Dr. Hansen emphasized to Moore the importance of low impact aerobic exercise, and diagnosed her with neck pain and fibromyalgia. (R. 159) On June 2, 2004, she was seen at Kuumba again for continued "neck and shoulder pain." (R. 164) Dr. Hansen remarked plaintiff acknowledged some improvement in her pain, but she stated that her shoulder had begun to bother her. (R. 164) Dr. Hansen suggested physical therapy but Moore refused, stating she would like to try some exercises on her own. (R. 163)

On January 6, 2005, plaintiff received an MRI, which showed cervical spondylosis at C5-6 and C6-7. (R. 168) Additionally, images showed a small soft disk protrusion at C6-7 in the foramen on the right. (R. 168) A tiny disk protrusion at C7-T1 was also noted. (R. 168)

An additional RFC assessment was completed by Dr. H.C. Alexander, III, a specialist in rheumatology and internal medicine, on February 9, 2005. (R. 175-178) Dr. Alexander indicated plaintiff can occasionally lift or carry fifty (50) pounds, and frequently lift or carry twenty (20) pounds; and that she can stand or walk six (6) or more hours in an eight (8) hour workday, and sit six (6) or more hours in an eight (8) hour workday. (R. 176) In addition, he noted plaintiff can frequently climb stairs or ramps, occasionally climb ladders/ropes/scaffolds, and that she could occasionally kneel, crouch, crawl, stoop or bend. (R. 176)

The medical documentation in the record does not support plaintiff's subjective complaints. Additionally, other evidence in the record fails to establish plaintiff is limited to the degree claimed by her. Plaintiff stated on her Daily Activities Questionnaire that she is able to do light chores around the house in the morning, afternoon and evening, drive her daughter to and from school, and grocery shop. (R. 83-84) She reads, crochets, plays with her dogs, fixes dinner, and walks around outside. (R. 83-84) Plaintiff also stated that she goes to watch her daughter's volleyball games, and that she does not need help going places. (R. 83)

Furthermore, at the administrative hearing, plaintiff testified that she stopped working because her employer wanted her to work overtime, but that if she had not been asked to work overtime, she "possibly" could have still managed to work at her job. (R. 190) She also testified that after she stopped working for Goodwill, she did not attempt to find a job elsewhere that involved less lifting, but instead "took my time, trying to wait around to find that right job." (R. 194)

Plaintiff was unable to give an accurate description of her physical limitations at the administrative hearing:

ALJ: Okay. Just kind of adding up, doing the math here, you have a problem. If you can only sit five or 10 minutes and you have to stand 15 or 20 minutes but you tell me you can only stand 10 minutes and need to sit for 10 or 15 minutes, see, it's not matching up?

CLMT: Yeah. I'm not a very good judge, far as mentally or with math. I don't pay any attention to time. That's my problem.

ALJ: So, it could be a little longer than five or 10 minutes –

CLMT: Yes.

(R. 198-99) Plaintiff also testified at the administrative hearing that she takes walks in her yard, (R. 203), crochets a little each day, (R. 204), and goes out to eat with her daughter a couple of times a month, (R. 207).

While plaintiff also claims disability based on carpal tunnel, fatigue, depression and endometriosis, in addition to neck pain and fibromyalgia, (R. 59), there is not a scintilla of evidence in the record to support her claims of disability based on these impairments. Dr. Alexander testified at the administrative hearing that there is no medical documentation supporting plaintiff's claims of carpal tunnel, or that he believes there was ever a correct diagnosis of fibromyalgia. (R. 225-26) As to her claimed neck pain, no doctor has opined that any impairment limits plaintiff in a greater capacity than as assessed by the ALJ in his RFC determination. Plaintiff's own testimony as to her physical limitations is inconsistent, and her daily activities support the ALJ's findings as to her capacity. Accordingly, the ALJ's determination should be affirmed.

**IV**

As an alternative to granting summary judgment in favor of plaintiff, Moore requests that the court remand this case under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence.

Sentence six authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. (See, e.g., Pl.'s Br. Ex. 1)

The Fourth Circuit in Borders held that a reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met. Borders, 777 F.2d at 955. First, the evidence must relate back to the time the application was first filed and it must be new, in that it cannot be merely cumulative. Id.; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). The evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her. Borders, 777 F.2d at 955. There must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner. Id. Finally, the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Id.

Plaintiff has met the fourth step of the Borders test in this case, as plaintiff has provided the court with the evidence to be considered on remand and the court understands its nature. See Borders, 777 F.2d at 955. Additionally, the records presented to the court for consideration are records from Gary R. Simonds, M.D., dated April 19, 2005. Because these records were not in existence at the time the ALJ and the Appeals Council issued their decisions, there is good cause shown as to why the records were not previously submitted for review. See id. However, Moore has not satisfied the other requirements for remand under Borders. A sentence six remand is inappropriate in this case because the evidence presented to the court is neither new nor material.

The records provided from Dr. Simonds consist of a letter to Dr. Hansen, as well as a short doctor's note. (Pl.'s Br. Ex. 1) In his letter, Dr. Simonds reported plaintiff's subjective complaints, and noted that her range of motion in her neck, shoulders and back is limited and somewhat painful. (Pl.'s Br. Ex. 1) However, he remarked that her gait is normal, cranial nerve

function good, and that motor function in upper and lower extremities is 5/5. (Pl.'s Br. Ex. 1) He also stated that her MRI revealed multi-level degenerative changes, especially at C5-6 and C6-7, with a loss of cervical lordosis. (Pl.'s Br. Ex. 1) In addition, C5-6 and C6-7 show significant degenerative disc disease with osteophyte formation but without significant nerve root compression or spinal cord compression. (Pl.'s Br. Ex. 1) He stated treatment options included surgical fusion "if push came to shove," but suggested alternative treatment in the form of physical therapy, anti-inflammatory medication, or epidural steroids. (Pl.'s Br. Ex. 1)

Contrary to plaintiff's assertions, the records provided by plaintiff shed no new light on plaintiff's impairments or limitations. Plaintiff has previously been diagnosed with chronic back pain, and a prior MRI showed degenerative disease in the lower C-spine. (R. 122-125) Dr. Humphries noted that should plaintiff be diagnosed with degenerative disc disease, she would be limited to occasional stooping or crouching, and lifting twenty-five (25) pounds occasionally and ten (10) pounds frequently. (R. 128-29) This assessment coincides with that of the ALJ. Dr. Hansen repeatedly recommended exercise and physical therapy to plaintiff, (R. 156, 159, 163), but his notes indicate that she had not been performing her exercises, (R. 158). Additionally, Dr. Humphries' records document plaintiff's limited range of motion. (R. 127) The records provided by plaintiff in Exhibit 1 are cumulative, and thus do not constitute new evidence as defined by Borders, 777 F.2d at 955. Likewise, this evidence would not change the Commissioner's decision and therefore, the evidence is not material. As none of the evidence presented to the court by the plaintiff would warrant a sentence six remand under Borders, the decision of the ALJ is affirmed.

## V

Substantial evidence supports the ALJ's finding that plaintiff is not disabled. No doctor has opined that the plaintiff is disabled, or that her RFC is more limited than as assessed by the ALJ. Substantial evidence supports the ALJ's conclusion that Moore's subjective complaints are not supported by evidence in the medical record, and that her daily activities are inconsistent with her complaints. Furthermore, remand is inappropriate in this case under sentence six. Accordingly, the decision of the Commissioner is affirmed, and plaintiff's motion for summary judgment is denied.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER**: This 23rd day of February, 2006.

Michael F. Urbanski
United States Magistrate Judge